# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOANNE ZIPPITTELLI,** | : | **No. 3:05cv2214** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **J.C. PENNEY COMPANY, INC.,** | : | |
| **J.C. PENNEY TELEMARKETING,** | : | |
| **INC., and** | : | |
| **JAMES JOHNSON,** | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

_____Before the court is defendants' motion for summary judgment (Doc. 18).

Having been fully briefed and argued, the matter is ripe for disposition.

## I. Background

The plaintiff, who is 66 years old, brought this employment discrimination suit

against her employer, J.C. Penney, after the company failed to promote her to the

position of shift operations manager at the company's Moosic, Pennsylvania

Customer Service Center.  (See Complaint (Doc. 1)).  She alleged violations of the

Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq., Title VII of

the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000(e) et seq., retaliation claims

under both acts, and the same claims under the Pennsylvania Human Relations Act

(PHRA), 43 P.S. § 951 et seq.  She brought these claims against both the company

and the PHRA claims against her supervisor at the Moosic center, James Johnson.

Plaintiff sought relief in the form of appointment to the position she was denied, back pay, costs and attorney's fees, front pay, and punitive and liquidated damages.

Plaintiff was hired by J.C. Penney on July 18, 1988.  (Defendant's Statement of Material Facts (hereinafter "Defendant's Statement of Facts") (Doc. 19) at ¶ 1)[1]. She was the first associate hired at the new Customer Service Center in Moosic. James Johnson became personnel manager at the facility in March 1990. (Defendant's Statement of Facts at ¶ 5).  Johnson was promoted to manager of the call center in March 1999 (Id. at ¶).[2]  After Johnson came to the facility, plaintiff frequently sought promotion to a management position.  In 1990, she sought promotion to seasonal shift leader, also known as general lead clerk.  (Plaintiff's Deposition, Attached as Exhibit A to Plaintiff Brief in Opposition to Defendant's Motion for Summary Judgment (Doc. 27) (hereinafter "Plaintiff's Deposition") at 46). The company denied her the position, giving it instead to Mike Martino.  (Id. at 47). Plaintiff felt that she had been passed over for the promotion because of her sex. (Id. at 48).  Feeling that complaining about this discrimination would be "useless" and harmful to her prospects of future promotion, plaintiff did not file any formal complaints about this hiring decision.  (Id. at 55).  Plaintiff was denied a similar

---

[1]The plaintiff admits to this statement of material fact.  (See Plaintiff's counterstatement of Material Facts (hereinafter "Plaintiff's Counterstatement") (Doc. 28) at ¶ 1).  We will cite to the statement of material facts only for those statements of fact which are not disputed.  If the material fact is disputed, we will disclose that.

[2]Plaintiff apparently disputes the non-material fact of the date of Johnson's promotion.  (Plaintiff's Counterstatement at ¶ 7).

promotion in 1991; she did not make a formal complaint of gender discrimination, but did tell a regional manager that she felt the promotion was awarded to a man on the basis of gender and office politics.  (Id. at 57-58).  Defendants denied plaintiff promotion in 1992, giving the position to another woman.  (Id. at 61).  She believed she failed to get this promotion because she worked in personnel, and because she had complained to a manager about "harassment" at her job.  (Id. at 64-5). Managers, she told the supervisor, held her to higher performance standards than they did others in the same position, both men and women.  (Id. at 65).  She did not claim that this harassment was on the basis of her sex or age.  (Id. at 67-68).  This pattern continued until 1997, when the company promoted plaintiff to general lead clerk.  (Id. at 71-72).  James Johnson asked plaintiff if she planned to apply for the position, suggesting she do so.  (Id. at 72-3).

Plaintiff contends that after she complained in 1993 or 1994 to a supervisor about her lack of opportunity for promotion, Johnson told two of her coworkers that plaintiff would "never be promoted while he was there."  (Id. at 98).  Plaintiff made no complaint about this comment.  (Id. at 101).   Matthew Cavanaugh, who worked as a Shift Operations Manager for more than fourteen years for defendants until he was fired in 2002, testified in an affidavit that Defendant Johnson had made a remark at a management meeting that plaintiff and a coworker would "never be promoted to management."  (Affidavit of Matthew Cavanaugh, Plaintiff's Exhibit E to Brief in Opposition to Motion for Summary Judgment (Doc. 27) at ¶¶ 32, 38).  Cavanaugh

3

did not describe when the meeting took place or why Johnson declared that he would not promote the plaintiff.  Johnson also declared, Cavanaugh claims, that "[a] woman's place is in the home."  (Id. at ¶ 7).

The promotion decision about which plaintiff complains came in 2004.   In the summer of that year, plaintiff applied for the shift operations manager job after Johnson informed her it had become available.  (Plaintiff's Deposition at 116).  At the time, she was working as a general lead clerk in the Call Service Center.   (Id.).  She was one of four women–all of whom had the same job title at the time–who applied for that job.  (Id.).  The candidates submitted resumés, and underwent telephone interviews with a recruiter from J.C. Penney's corporate office in Dallas, Texas.  (Affidavit of James Johnson, attached as an exhibit to defendant's statement of material facts (Doc. 19) (hereinafter "Johnson Affidavit") at ¶ 13).  These telephone interviews had not previously been part of the promotion process at the company.  (Plaintiff's Deposition at 116).  Johnson then interviewed the candidates, determining that three of the candidates, including the plaintiff, were qualified for the position.  Plaintiff concluded during the interview that she would get the position, believing that Johnson had already decided which candidate to hire.  (Id.).  Johnson then ranked the three candidates, making plaintiff his third choice.  (Johnson affidavit at ¶ 13).  Patti Cruikshank was Johnson's first choice, and after he consulted with his supervisor, J.C. Penney hired Cruikshank as shift operations manager.  (Id.).

Plaintiff blamed her age for her lack of success in seeking the promotion and

told her supervisor, Anita Applegate Benko, of this suspicion.  (Plaintiff's Deposition

at 105).  This supervisor asked her how old she was.  (Id.).  When Benko found out

she was 63, she said she would "probably not" get the position.  (Id.).  Plaintiff made

no formal complaint of age discrimination immediately after hearing this comment.

(Id. at 106).  She did file a complaint of age discrimination with the Equal

Employment Opportunity Commission in 2004, however.  (Id. at 199).  She received

a right to sue letter from the EEOC in 2005.  (Id. at 206).   After plaintiff filed her

lawsuit, she participated in a deposition.  In that deposition, plaintiff contended that

defendants did not promote her in 2004 because of her age.  (Id. at 120).  She

admitted, however, that she did not think she had been denied the promotion

because of her sex.  (Id.).[3]

## II.  Jurisdiction

As this case is brought pursuant the Age Discrimination in Employment Act,

29 U.S.C. § 621, *et seq.*, and Title VII of the Civil Rights Act of 1964, as amended,

42 U.S.C. 2000(e), *et seq.*, we have jurisdiction under 28 U.S.C. § 1331 ("The district

courts shall have original jurisdiction of all civil actions arising under the Constitution,

laws, or treaties of the United States.").  We also have pendant jurisdiction of

---

[3]The deposition testimony makes this point clear:
> Q.  Why do you believe that you did not get the 2004 shift operations
> manager position?
> A.  Because of my age.
> Q.  Any other reason than your age?
> A.  No.  (Plaintiff's Deposition at 120).

plaintiff's claims under the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.*

## III.  Legal Standard

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion.  International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party.  Anderson, 477 U.S. at 248 (1986).  A fact is material when it might affect the outcome of the suit under the governing law.  Id.  Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence,

6

would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

## IV.  Discussion

Defendant moves for summary judgment on several grounds. We will address each in turn. As a preliminary matter, we note that we apply the same legal standards to claims brought under the Pennsylvania Human Relations Act as we do to claims brought under federal anti-discrimination laws that address the same subject matter. See Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996) (finding that "While the Pennsylvania courts are not bound in their interpretations of Pennsylvania law by federal interpretations of parallel provisions in Title VII, the ADA, or the ADEA [citations omitted], its courts nevertheless generally interpret the PHRA in accord with its federal counterparts."). Accordingly, our decision on summary judgment on the employment discrimination and retaliation claims under Title VII and the ADEA will also apply to the same claims made under the PHRA.

## A.  Statute of limitations

Defendant argues that all of plaintiff's sex discrimination claims, and most of her age discrimination and retaliations claims, are barred by the statute of limitations. The defendant argues, without opposition from the plaintiff, that a 300-day statue of

limitations exists for filing discrimination claims with the appropriate agency.  <u>See</u> 42

U.S.C. § 2000e-5(e)(1) (establishing that discrimination charges "in a case of an

unlawful employment practice with respect to which the person aggrieved has initially

instituted proceedings with a State or local agency with authority to grant or seek

relief from such practice or to institute criminal proceedings with respect thereto

upon receiving notice thereof, such charge shall be filed by or on behalf of the

person aggrieved within three hundred days after the alleged unlawful employment

practice occurred.");  <u>Watson v. Eastman Kodak Co.</u>, 235 F.3d 851, 852 (3d Cir.

2000) (holding that "[u]nder federal law, a complainant has 300 days from the date of

the adverse employment decision to file a claim with the Equal Employment

Opportunity Commission ("EEOC").").  Defendants point out that most of the

allegations that plaintiff makes of age and sex discrimination address a failure to

promote her before 1997, when she was promoted to her present position.  Each

refusal to provide her with a promotion, and each retaliatory action for her complaints

about that failure to promote, defendants argue, were discrete claims, and plaintiff let

the statute of limitations run on each cause.  They are therefore time barred.

We agree with the defendant that these claims are time-barred because

plaintiff provides no record to demonstrate that she filed discrimination claims within

the statutory period.  Indeed, plaintiff filed no discrimination claims with any agency

until after she was denied promotion in 2004.  Plaintiff concedes this point, but

argues that we should consider the alleged discrimination as evidence to understand

8

defendants' behavior as retaliation in 2004.  The issue of whether these claims of

discrimination could be admitted for that purpose is a question for trial, not for this

motion for judgment on the claims themselves.  Here, we conclude that complaints

about gender or age discrimination that occurred in the 1990s, years before plaintiff

filed her claim, are barred by the applicable statute of limitations.  We will therefore

grant summary judgment for all claims arising out of incidents before the 2004

decision not to promote the plaintiff, which defendants admit is not barred by the

applicable statue of limitations.

## B.  Sex discrimination in the 2004 promotion

The parties agree that the statute of limitations does not bar plaintiff's claim

that she suffered discrimination when defendants failed to promote her to the

position of shift operations manager in 2004.  We must therefore determine whether

plaintiff has provided evidence sufficient to meet her burden and avoid summary

judgment on that claim.  Plaintiff first claims that defendants' failure to promote her

constituted sex discrimination.  Title VII of the Civil Rights Act of 1964 provides that

"[i]t shall be unlawful employment practice for an employer . . . to discriminate

against any individual with respect to his compensation, terms, conditions, or

privileges of employment, because of such individual's race, color, religion, sex, or

national origin."  42 U.S.C. § 2000e-2(a)(1).

First, we shall consider whether plaintiff has presented direct evidence of

employment discrimination.  Direct evidence of discrimination "must demonstrate

that the 'decision makers placed substantial negative reliance on an illegitimate criterion in making their decision." Anderson v. CONRAIL, 297 F.3d 242, 248 (3d Cir. 2002) (finding that direct evidence "must reveal a sufficient discriminatory animus making it unnecessary to rely on any presumption from the prima facie case to shift the burden of production."). We do not find that plaintiff has produced any direct evidence of sex discrimination.[4] Plaintiff points to remarks about whether women should work outside the home made by her supervisor as evidence of sex discrimination. We find, however, that these statements are not direct evidence of a discriminatory motive for defendants' decision to deny promotion. Johnson made the remarks at a time far removed from defendants' hiring decision, and no evidence exists to show that those statements and defendants' hiring decision were related.

Johnson's remarks about the propriety of women in the workplace are not direct evidence of discrimination. The fact that the defendants hired another women for the position is evidence that, whatever Johnson's alleged attitude towards women in the workplace, those attitudes did not prevent him from hiring a woman for the

---

[4]If we had concluded that plaintiff offered direct evidence for her claims we would have been forced to examine plaintiff's claims through a different lens. In cases where a plaintiff presents direct evidence of employment discrimination but the defendant offers other motives for the adverse employment decision, courts employ a burden shifting test. In the age discrimination context, we ask whether plaintiff "(1) presented direct evidence of age discrimination against [the defendant], thereby triggering the test presented in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), shifting to it the burden of showing that they would have terminated her employment even if they had not considered her age; (2) presented sufficient evidence to negate Metropolitan's evidence in support of its contention that it would have fired her, because of legitimate stated reasons, even if it had not been for her age; and (3) was harmed by the allegedly retaliatory conduct of Metropolitan." Glanzman v. Metropolitan Management Corp., 391 F.3d 506, 508 (3d Cir. 2004).

position to which plaintiff applied.  Johnson's stereotypical statements about

women's capabilities are not by themselves sufficient to provide direct evidence of

sex discrimination:  "[r]emarks at work that are based on sex stereotypes do not

inevitably prove that gender played a part in a particular employment decision.  The

plaintiff must show that the employer actually relied on her gender in making its

decision."  Price Waterhouse, 490 U.S. at 252.   Still, "[i]n making this showing,

stereotype remarks can certainly be *evidence* that gender played a part."  Id.  Here,

the plaintiff offers no evidence beyond these stereotypical remarks to show that her

sex was motivated plaintiff's decision, and she has thus provided no direct evidence

to support her claims.

        We can find discrimination on the basis of sex without direct evidence of that

discrimination, however.  Courts have also established a burden-shifting scheme for

claims of sex discrimination under Title VII when no direct evidence of such

discrimination exists: "the plaintiff must establish a prima facie case of discrimination.

If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the

defendant 'to articulate some legitimate, nondiscriminatory reason for the plaintiff's

rejection."  Jones v. School Dist. of Philadelphia, 198 F.3d 403, 408 (3d Cir. 1999)

(quoting McDonnell Douglas Corp. v. Green, 411 U.S. 792,802 (1973)).  If the

defendant meets that burden, the burden shifts back to the plaintiff, who must "prove

by a preponderance of the evidence that the legitimate reasons offered by the

defendant were not its true reasons, but were a pretext for the discrimination."  Id.  A

11

plaintiff seeking to establish a prima facie case under Title VII "must show (1) that she is a member of a protected class, (2) she was qualified for the position, (3) she was discharged, and (4) the position was ultimately filled by a person not of the protected class." Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061, 1066 (3d Cir. 1996).

Defendant argues that plaintiff cannot make out a prima facie case of sex discrimination concerning this promotion and therefore summary judgment on this matter is appropriate. Defendant agrees that plaintiff could establish the first three elements, but argues that the job was given to another woman, and plaintiff thus fails on the fourth. Plaintiff, defendant points out, would then have the burden of showing that its stated reasons for not promoting her were mere pretext for sex discrimination. She did not do so, defendant contends; even in her deposition plaintiff did not allege that sex discrimination was a basis for her claim of discrimination in the promotion.

The fact that another woman received the position does not by itself mean that plaintiff has failed to present a prima facie case of sex discrimination. See Pivirotto v. Innovative Systems, Inc., 191 F.3d 344, 353 -54 (3d Cir. 1999) (holding that "even if a woman is fired and replaced by another woman, she may have been treated differently from similarly situated male employees" and thus able to make out a prima facie case of discrimination."); O'Connor v. Consolidated Caterers Corp., 517 U.S. 308, 312 (1996) (holding that "[t]he fact that one person in the protected class

12

has lost out to another person in the protected class is thus irrelevant, so long as he

has lost out *because of his age*.") (emphasis in original).  We find, however, that

plaintiff has offered no other evidence to show that her employer discriminated

against her on the basis of her sex.  Any comments by Johnson about his belief that

women did not belong in the workplace are belied by the fact that the majority of the

workers at the Moosic facility are women, as well as the promotion of women to

management and supervisory positions, including the plaintiff herself.  Plaintiff

presents no evidence that Johnson or any other supervisor had a particular animus

towards her as a woman.  Indeed, plaintiff admitted in her deposition that she did not

think she was denied the promotion because of her sex.  See Glanzman v. Metro

Mgt. Corp., 391 F.3d 506, 511 (3d Cir. 2004) (finding for defendant because plaintiff

admitted that he had been fired for refusing to apologize for disobeying company

policy, not in retaliation for engaging in protected activity).  Given this lack of

evidence, we find that plaintiff has not provided evidence sufficient to make out a

prima facie case for sex discrimination, and will grant defendants' motion on this

claim.

For the sake of completeness, we note that if we were to accept that plaintiff

has made out a prima facie case, then it would be up to the defendant to provide

evidence to rebut this prima facie case and show that the company denied plaintiff's

promotion for a "'legitimate, non-discriminatory reason.'" Jones, 198 F.3d at 408.

Defendants say they do so here because they have provided an affidavit that shows

13

that they had a legitimate, non-discriminatory reason for hiring the person they did, Patti Cruikshank.  (See Johnson Affidavit).  Johnson, who made the hiring decision, decided to hire Cruikshank because of her personal qualities, which included an excellent overall performance record, "a very positive can-do attitude," that she was a "team player," and because she demonstrated initiative and seemed able to handle new responsibilities.  (Id. at ¶ 13)  He preferred her to plaintiff because plaintiff was not as able to work independently, and he wanted "the candidate who best demonstrated the ability to make these decisions on her own without requiring large amounts of guidance from me."  (Id. at ¶ 15).  Age, Johnson claims, was not a consideration in his hiring decision.  (Id. at ¶ 16).

We find that these proffered reasons constitute legitimate non-discriminatory reasons for defendant's employment decision.  In order to meet its burden in a sex discrimination case, an employer need only introduce "evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision."  Fuentes v. Pierske, 32 F.3d 759, 763 (3d Cir. 1994).  "The employer need not prove that the tendered reason *actually* motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff."  Id. (emphasis in original).  Here, defendants claim that their employment decision was based on a careful assessment of which employee best fit the demands of the position, and that they found the plaintiff less qualified than the successful candidate in the area of ability to

14

make independent decisions.  The employer also found the candidate who was hired to be highly qualified based on her motivation to do the job and her ability to work with and inspire other employees.  These stated reasons clearly have nothing to do with plaintiff's gender, and we will therefore conclude that defendants have met their burden to provide legitimate, non-discriminatory reasons for their employment decision.

Since defendants have met their burden of providing legitimate non-discriminatory reasons for the employment decision, the burden now shifts back to the plaintiff to show that a jury  "could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating factor or determinative cause of the employer's action."  Id. at 764.  Plaintiff offers only two pieces of evidence which purport to discredit these reasons for the defendants' employment decision.  First, plaintiff points to statements allegedly made by plaintiff's supervisor, Defendant Johnson, that plaintiff would never be promoted as long as he worked for J.C. Penney. Second, Johnson allegedly told another supervisor that he believed that women should be at home, not in the workplace.

Defendant Johnson's alleged statements seeking to prevent plaintiff's promotion do not reference plaintiff's gender as a motivating factor for this animus, making their usefulness for overcoming defendants' stated reasons for their employment decision questionable.  Further, the bias in these statements is

undermined by the fact that Defendant Johnson approved a promotion for the plaintiff after he made this statement.  A stray statement, made years before the alleged discrimination, and which was contradicted by the defendant's own actions in giving plaintiff a previous promotion, are not evidence that can undermine legitimate, non-discriminatory reasons for promotion.  See id. at 765 (holding that "the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence.'") (quoting Ezold v. Wolf, Block, Schorr and Solis-Cohen, 983 F.2d 509, 531 (3d Cir. 1993).  Similarly, whatever Johnson's supposed attitude towards women in the workplace, the majority of employees at the Moosic facility were (and are) women, and all of the candidates for promotion were women.  No juror could reasonably find that Johnson's private views reflected company practices, or that he acted on his alleged prejudices.  Accordingly, even if plaintiff had stated a prima facie case of gender discrimination, we would find that plaintiff has not met her burden to overcome defendants' legitimate, non-discriminatory reasons for their employment decision.  Accordingly, for all the aforementioned reasons, judgment will be granted to the defendants on plaintiff's sex discrimination claim.

## C.  Age Discrimination

The Age Discrimination in Employment Act prohibits "discrimination against an individual over age 40 with respect to 'compensation, terms, conditions, or privileges

16

of employment, because of an individual's age.'" Billet v. Cigna Corp., 940 F.2d 812,

816 (3d Cir. 1991 (quoting 29 U.S.C. § 623(a)).  To recover under the act, "'a plaintiff

must prove by a preponderance of the evidence that age was the determinative

factor in the employer's decision' at issue."  Id.  (quoting Bartek v. Urban

Redevelopment Authority of Pittsburgh, 882 F.2d 739, 742 (3d Cir. 1989)).

Plaintiff here apparently contends that she has direct evidence of

discrimination in the comment made by Anita Benko that she would "probably not"

get a job after plaintiff revealed to Benko her age.  We apply the same "direct

evidence" test to claims of age discrimination that we do to claims of sex

discrimination.  See Glanzman, 391 F.3d at 512 (holding that in age discrimination

cases, "if direct evidence is used, the proponent of the evidence must satisfy the test

laid out in Price Waterhouse in order to prove a violation of the ADEA [citations

omitted].).  "To be 'direct' for purposes of the Price Waterhouse test, evidence must

be sufficient to allow the jury to find that the decision makers placed a substantial

negative reliance on the plaintiff's age in reaching their decision. [citations omitted] ."

Id.  In other words, a plaintiff "must produce evidence of discriminatory attitudes

about age that were causally related to the decision to fire her."  Id.  In the instant

case, a reasonable jury could not come to the conclusion that age was a

substantially negative factor that caused the company not to promote her.  She

points to only one remark about age from a person not involved in the decision about

whether to promote her.  Plaintiff could not convince a reasonable juror that this

evidence proves that age was a substantial factor in the decision made by Johnson not to promote the plaintiff.  Accordingly, we find that no direct evidence exists to prove that defendants discriminated on the basis of age.

Lacking direct evidence of discrimination, a plaintiff seeking recovery under the ADEA must first make out a prima facie case by "showing (1) he is within the protected age class, i.e. over forty; (2) that he was qualified for the position at issue; (3) he was dismissed despite being qualified; and (4) he was replaced by a person sufficiently younger to permit an inference of age discrimination."  Armruster v. Unisys Corp., 32 F.3d 768 (3d Cir. 1994).[5]  Once the plaintiff establishes this prima facie case, "the defendant has the burden of producing evidence that it had 'a legitimate, nondiscriminatory reason for the discharge.'"  Fakete v. Aetna, Inc., 308 F.3d 335, 338 (3d Cir. 2002).  If the defendant produces such evidence, the burden shifts back to the plaintiff, who provide "evidence 'from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons[,] or (2) believe that an invidious discrimiantory reason was more likely than not a motivating or determinative cause of the employer's action.'"  Id. (quoting Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).

---

[5]We note that the United States Supreme Court has found that the mere fact that an employee was replaced by another person within the protected class does not necessarily mean that a plaintiff cannot make out a prima facie case for age discrimination, since "the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class."  O'Connor, 517 U.S. at 313.  We need not address that question here, since the person who received the promotion was outside the protected class.

Here, plaintiff was sixty-three years old at the time she applied for the promotion, and thus within the protected class. She has shown that she was qualified for the position, regardless of age. She did not get the promotion applied for, and the job went to a woman younger than forty. Defendant agrees that plaintiff has made out the prima facie case required by federal law.

Defendant argues, however, that it had legitimate, non-discriminatory reasons for its promotion decision and that plaintiff has no evidence with which to rebut that case. Defendants advance the same non-discriminatory reasons in the age discrimination context that they advanced for plaintiff's sex discrimination claim discussed in part IVB, *supra*. We find that the defendants have met their burden, advancing legitimate non-discriminatory reasons to explain why they passed plaintiff over for a promotion. The burden now lies with plaintiff to demonstrate that defendant's reasons serve as pretext to avoid liability for their actual motivations.

In order to meet her burden of demonstrating that defendants' stated reasons for their promotion decision were pretext to mask a discriminatory motive, plaintiff must "[produce] sufficient evidence to raise a genuine issue of fact as to whether the employer's proffered reasons were not its true reasons for the challenged employment action." Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061, 1067 (3d Cir. 1996). A plaintiff must do more, however, than simply demonstrate that the employer did not make the correct hiring decision: "to discredit the employer's proffered reason, the plaintiff cannot simply show that the employer's

decision was wrong or mistaken, since the factual dispute at issue is whether a discriminatory animus motivated the employer, not whether the employer is 'wise, shrewd, prudent, or competent." Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 328 (3d Cir. 1995).

Plaintiff contends that she had better performance evaluations and that the younger worker actually promoted to the job had an inferior record in areas supposedly determinative of eligibility for promotion, like attendance. A jury could not use this evidence to find that defendants' stated reasons for its employment decision were mere pretext. That evidence could only be used to convince a jury that defendants were wrong in the employment decision they made, not that their mistake was motivated by an animus towards plaintiff because of her age. Federal courts do not sit to pass judgment on the wisdom of an employer's hiring decisions, but only on whether those decisions were made in a way that violated anti-discrimination law. She also claims that defendants doctored attendance records in order to ensure her younger rival's eligibility for promotion. Even if we were to credit this evidence, we fail to see how such action demonstrates an improper discriminatory motive rather than simply a shoddy employment practice.

The only evidence plaintiff supplies of a discriminatory intent in relation to plaintiff's age comes in Benko's remark that plaintiff "probably" would not get the job when plaintiff revealed her age. We do not find this evidence sufficient for a jury to find that defendants' stated reasons served as a pretext to hide a discriminatory

20

practice.  Plaintiff has introduced no evidence that Benko was involved in the

decision to award the promotion, nor that she was privy to the considerations of the

managers who did make that decision.  Benko made her remark in informal

conversation, and it was not intended as any statement of company policy, formal or

informal.  Indeed, the comment seems to represent a pessimistic and sympathetic

statement from a coworker who assumed that younger people had more advantages

in the workplace.  The remark was too temporally and situationally distant from the

actual hiring decision to be seen as strong evidence of the employer's practice or

attitude.  This case is therefore like Brewer v. Quaker State Oil Refining Corp., 72

F.3d 326 (3d Cir. 1995).  In that age discrimination lawsuit, the plaintiff pointed to a

statement by the company's chief executive in a newsletter that two executives in

their 40s represented the age group the company sought to hire and promote.  Id. at

333.  The comment, made two years before the company decided to fire the plaintiff,

seemed to the court simply a "stray remark" "made by a non-decisionmaker and

temporally remote from the decision" in question.  Id.   The comment was thus not

worthy of "commanding weight."  Id.

        The remark here is not relevant to the defendants' hiring decision.  There is no

evidence that the supervisor who made the remark had anything to do with the

decision to promote Cruikshank instead of the plaintiff.[6]  Unlike the statement made

---

[6]Plaintiff has submitted no evidence to demonstrate that Benko helped make the
hiring decision.  In her deposition, plaintiff stated that Benko "may have had a hand" in
deciding on the promotion, but admitted that she did not know who made the decision.

by the Quaker State chief executive in a company publication, the statement here was made in an off-hand, informal way by a supervisor who had no role in the hiring decision.  We cannot find that a jury could conclude that the statement was one that demonstrates that age was a motivating factor in the hiring decision that Johnson and J.C. Penney executives in Dallas made.

## D.  Plaintiff's Retaliation Claim

Plaintiff claims that she was denied her promotion as retaliation for her complaints about defendants' discriminatory behavior.  In order to prevail on a retaliation claim, a plaintiff must first make out a prima facie case "that:  (1) the employee engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action."  Abramson v. William Patterson College, 260 F.3d 265, 286 (3d Cir. 2001).  Once plaintiff advances this case, the defendant must "advance a legitimate, non-discriminatory reason for its adverse employment action."  Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500-01 (3d Cir. 1997).  This burden is not especially onerous: "it is satisfied if the defendant articulates any legitimate reason for the [adverse employment action].  The defendant need not prove the articulated reason actually motivated the action."  Id.  If the defendant meets this

---

(Plaintiff's Deposition at 123).  No evidence indicates that Benko played a role in this decision.  Plaintiff admits she was "led to believe" that the decision on promotion would be made at company headquarters in Dallas, Texas.  (Id.).

burden, then the plaintiff must show "both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." Id. at 501.  As such, "[t]he plaintiff must prove that retaliatory animus played a role in the employer's decisionmaking process and (2) that it had a determinative effect on that process." Id.

Defendants claim plaintiff cannot make out a prima facie retaliation case because she did not engage in any protected activity until 2005, when she filed an EEOC complaint.  The employment decision of which she complains took place before she filed this complaint, and she therefore cannot claim any retaliatory action. None of plaintiff's previous complaints about treatment in the workplace, defendant contends, had to do with sex discrimination.  In any case, the complaints she made were years before the decision not to promote her, and there is thus no causal connection to the adverse action.  They also argue that there were legitimate non-discriminatory reasons not to promote plaintiff and that plaintiff cannot rebut them. Plaintiff argues that plaintiff's initial complaints in the 1990s to her supervisors created an animus that persisted.  This means, plaintiff contends, that retaliation exists.  The plaintiff also claims that a generalized attitude of discrimination against women at the facility means that any action against plaintiff was retaliation.

We agree with the defendants that plaintiff cannot make out a prima facie case of retaliation, and will grant them summary judgment on this claim.  Plaintiff points to complaints made in the 1990s about discrimination towards her, but she

does not specify that she used any formal procedure to complain, or what the results

of those complaints were.  She also does not explain clearly against whom those

complaints were made.  The only formal complaint to the Equal Employment

Opportunity Commission that she apparently made occurred in 2005, after the

supposed retaliation occurred.   Plaintiff was promoted after she made those

supposed complaints in the 1990s, demonstrating that the complaints did not create

animosity towards the plaintiff that led to a retaliatory denial of advance.  There is

thus no evidence of a "causal link" between the plaintiff's protected activity and her

employer's conduct.  Abramson, 260 F.3d at 286.  We fail to see how we can assign

plaintiff's denial of promotion to conduct that occurred in the 1990s when a

promotion intervened between the conduct and the alleged retaliation.  See, e.g.,

Shramban v. Aetna, 262 F. Supp. 2d 531, 539 (E.D. Pa. 2003) (finding that "no

causal connection existed between complaints of ethnic-origin discrimination and an

adverse pay decision when the decision was made six months after the complaints

by a different supervisor and there was no intervening pattern of antagonism and

retaliation").

    We acknowledge that "[t]he mere passage of time is not legally conclusive

proof against retaliation."  Robinson v. Southeastern Pa. Transp. Auth., 982 F.2d

892, 894 (3d Cir. 1993).  Here, however, plaintiff has offered no evidence of an

intervening animosity between the decision to promote her in 1997 and the decision

to deny her promotion in 2004 by which we could draw a causal connection between

24

her earlier complaints and the adverse employment decision.[7]  We therefore find that

plaintiff has introduced no evidence by which a reasonable juror could find that

defendants' failure to promote plaintiff in 2004 was retaliation for her complaints

about management's treatment of her in the early 1990s when the evidence

indicates that a favorable employment decision, not continued harassment,

occurred.  Summary judgment will thus be granted to all the defendants on this

claim.

**E.  Defendant's claim that Johnson is not liable under the PHRA**

Defendants argue that Johnson is not liable under the Act because he did not

aid or abet a violation of the PHRA.  See 43 P.S. § 955(e) (making it unlawful "[f]or

any person, employer, employment agency, labor organization or employee, to aid,

abet, incite, compel or coerce the doing of any act declared by this section to be an

---

[7]This case is much different from <u>Robinson</u>, 982 F.2d 892, where the court found that evidence of retaliation existed even though two years passed between the complaint and the adverse employment decision.  In that case, the plaintiff, who worked in a bus garage, filed several complaints about what he claimed was racism that pervaded his workplace.  <u>Id.</u> at 895.  After plaintiff filed a union grievance and testified at a hearing in February 1984, plaintiff's "relationship with his supervisors deteriorated sharply."  <u>Id.</u>  The supervisors "began a pattern of harassing Robinson by repeatedly disciplining him for minor matters, miscalculating his points for absences from work, and generally trying to provoke Robinson into insubordination."  <u>Id.</u>  The plaintiff was fired from his job in December 1995.  <u>Id.</u> at 894.  Despite the more than two years that passed between plaintiff's initial complaints and his termination, the court found "the evidence supporting a finding of retaliation for the February, 1984 events is substantial."  <u>Id.</u> at 895.  Here, there is no evidence of a long pattern of abusive behavior that escalated after plaintiff made complaints and culminated in defendants' refusal to promote her.  Instead, there is a history of complaints, followed by a promotion.  There is no evidence of escalating animus and a pattern of adverse actions by the employer by which we might draw the conclusion that plaintiff's complaints caused the adverse decision on promotion.

unlawful discriminatory practice."); <u>Dici v. Pennsylvania</u>, 91 F.3d 542, 552 (3d Cir. 1996) (finding that an employee found "aiding or abetting" a violation could be liable). Plaintiff argues that defendant was directly involved in a violation of plaintiff's rights–he made the decision that denied her promotion, and he did so based on a discriminatory purpose.  We agree with the plaintiff.   If we were to find that she has produced evidence sufficient to survive summary judgment on her claims, then Defendant Johnson, who made the decision which she claims amounted to discrimination, would be liable for aiding and abetting a violation of the PHRA. Because we find that plaintiff has not produced evidence sufficient to survive summary judgment on her claims of discrimination, we also find that Defendant Johnson is not individually liable for those claims.

**F.  Punitive and Liquidated Damages are Unavailable to the Plaintiff**

Defendants raise several grounds to argue that punitive or liquidated damages against them are barred as a matter of law.  We agree, and would do so even if we found that plaintiff's claims under the ADEA, Title VII, and the PHRA could survive summary judgment.  In the interest of completeness, we will address the reasons for our findings on this matter.  The PHRA does not, as a matter of law, allow punitive damages.  See <u>Gagliardo v. Connaught Laboratories, Inc.</u>, 311 F.3d 565, 570 n.3 (3d Cir. 2002); <u>Hoy v. Angelone</u>, 456 Pa. Super. 596, 612 (Pa. Super. Ct. 1997). Since plaintiff only brings PHRA claims against Johnson, he is not liable for punitive damages.  Punitive damages are also therefore unavailable against the rest of the

26

defendants under the PHRA.

Plaintiff likewise could not obtain punitive damages against the defendants even if a reasonable juror could find that defendants had violated federal law and discriminated against her.  Under federal anti-discrimination law, a plaintiff seeking punitive damages must show that a defendant discriminated with "malice" or "reckless indifference" to plaintiff's rights.  See Kolstad v. American Dental Ass'n, 527 U.S. 526, 534 (1999).  The only evidence in the case that might be read to constitute "malice" is Defendant Johnson's statement that plaintiff would not be promoted while he had the power to decide.  That evidence, as we have previously stated, is not evidence by which a reasonable juror could find that Johnson discriminated against plaintiff; he promoted her after making this remark.  The other defendants are in any case not responsible for discrimination by Johnson in this matter, since the employer had well-established company procedures to prevent violation of federal anti-discrimination laws and plaintiff has produced no evidence that she made use of those procedures or that the company had purposely violated them.[8]  See Alexander v. Riga, 208 F.3d 419, 433 (3d Cir. 2000) (holding that "in the punitive damages context, an employer could not be vicariously liable for the discriminatory decisions of managerial agents where those decisions are contrary to

---

[8]Plaintiff admits that she was aware of this policy during much of her tenure with the company, and that she did not take advantage of reporting procedures for discrimination laid out by the company because she assumed they would be ineffective.  (See Plaintiff's Deposition at 29-33).

the employer's 'good faith efforts to comply with [civil rights laws].'" (quoting <u>Kolstad</u>,

527 U.S. at 544); <u>see also</u> (Johnson Affidavit at ¶ 8) (describing J.C. Penney anti-

harassment policies).

We also find that liquidated damages are unavailable to the plaintiff under the

Age Discrimination in Employment Act.  Courts have found that liquidated damages

are available under the ADEA only when the employer "willfully" violated the act.

<u>Hazen Paper Co. v. Biggins</u>, 507 U.S. 604, 614 (1993).  A "violation of the Act is

'willful' if the employer knew or showed reckless disregard for the matter of whether

its conduct was prohibited by the ADEA."  <u>Id.</u>  Plaintiff has produced no evidence by

which we could conclude that defendant violated the ADEA, much less that

defendant did so willingly.

**Conclusion**

For the foregoing reasons, we will grant the defendants' motion for summary

judgment.  An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOANNE ZIPPITTELLI,** | : | **No. 3:05cv2214** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **J.C. PENNEY COMPANY, INC.,** | : | |
| **J.C. PENNEY TELEMARKETING,** | : | |
| **INC., and** | : | |
| **JAMES JOHNSON,** | : | |
| **Defendants** | : | |

## ORDER

**AND NOW**, to wit, this 28th day of February 2007, the defendant's motion for summary judgment (Doc. 18) is hereby **GRANTED**.  The Clerk of Court is ordered to close the case.


BY THE COURT:

s/ James M. Munley
**JUDGE JAMES M. MUNLEY**
**United States District Court**